J-S62030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE MATTER OF: THE ADOPTION OF: E.L.-L.S., J.J.S., AND H.J.S.

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: C.A.M., NATURAL MOTHER

No. 755 WDA 2015

Appeal from the Decree entered April 10, 2015,
in the Court of Common Pleas of Erie County, Orphans'
Court, at No(s): 32, 32A & 32B in Adoption 2014

BEFORE:  GANTMAN, P.J., JENKINS, and PLATT*, JJ.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 24, 2015**

Appellant, C.A.M., ("Mother") appeals from the decrees dated April 10, 2015 and amended on April 15, 2015, in the Erie County Court of Common Pleas Orphans' Court, terminating Mother's parental rights to H.J.S. (born in December of 2007), E.L.-L.S. (born in August of 2010), and J.J.S. (born in June of 2009 ) (collectively "the Children").[1]  We affirm.

Since October of 2013, Erie County Office of Children and Youth ("OCY") has been involved with this family due to Mother's drug use and Mother's domestic violence against Father in front of the Children.  On October 25, 2013, the trial court issued an emergency protective order removing the Children from Mother and Father's care, and placing the Children in foster care.  On October 29, 2013, the trial court held a shelter

---

* Retired Senior Judge assigned to the Superior Court.

[1] On April 10, 2015, J.S. ("Father") voluntarily relinquished his parental rights to the Children, and Father is not a party to this appeal.

care hearing. Following the shelter care hearing, Mother and Father engaged in domestic violence in front of the Children at the courthouse. On November 13, 2013, the trial court adjudicated the Children dependent.

On December 18, 2013, following a hearing, the trial court directed that the Children would remain in foster care, with a goal of reunification with Mother and Father. The trial court also directed Mother to (1) refrain from using drugs or alcohol; (2) complete drug and alcohol treatment and submit to random urine testing; (3) complete parenting classes; (4) demonstrate the ability to provide for the health, safety, and welfare of the Children; (5) visit the Children, with all visits contingent on Mother arriving drug- and alcohol-free; (6) secure employment; (7) secure stable and safe housing; (8) complete a domestic violence avoidance program; (9) complete a mental health evaluation; and (10) comply with all further treatment recommendations.

On May 12, 2014, following an initial permanency review hearing, the trial court found Mother minimally compliant with the permanency plan. On June 4, 2014, following a permanency review hearing, the trial court found Mother not compliant, having made no progress with the permanency plan. The trial court ordered the Children's permanent placement goal changed to adoption.

On July 3, 2014, OCY filed petitions to involuntarily terminate Mother's parental rights to the Children. On April 10, 2015, the trial court held hearings on the termination petitions. At the hearing, Lisa Hamilton, an OCY caseworker; Monica Abbate; Shatoia Carroll, an OCY training supervisor; Nicole Seebach, an OCY coordinator for family dependency; Gaylene Abbott Fay, an OCY permanency caseworker; A.S., paternal grandmother ("Paternal Grandmother"); and Mother testified. On April 10, 2015, the trial court entered decrees terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5) and (b). On April 15, 2015, the trial court amended the decrees terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).

On May 11, 2015, Mother filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[2] Mother raises the following issues.

1. Whether the trial court erred and/or abused its discretion in failing to recognize that there was a bond in existence and that termination of parental rights would best serve the needs and welfare of the Children [?]

2. Whether the trial court erred and/or abused its discretion in failing to find that the [OCY] did not provide evidence that

---

[2] We observe that it was improper for Mother to file a single notice of appeal and statement of errors complained on appeal from decrees terminating the parental rights of Mother. *See* Pa.R.A.P. 341 ("Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). Nevertheless, we find her appeal preserved for this Court's review.

> [M]other failed to perform parental duties or evidence a settled purpose of relinquishing parental claim to the Children for a period in excess of six months [?]

> 3. Whether the trial court erred and/or abused its discretion in finding that the causes of the incapacity, abuse, neglect of [] Mother cannot or will not be remedied by [Mother?]

Mother's Brief at 6.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa.Super.2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa.Super.2003).

- 4 -

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super.2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super.2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super.2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa.2004).

In terminating Mother's parental rights, the trial court relied upon Sections 2511(a)(1) and (b) of the Adoption Act which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \*\*\*
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super.2004), *appeal denied*, 872 A.2d 1200 (Pa.2005) (internal citations omitted).

On appeal, Mother argues that the trial court erred in terminating her parental rights to the Children. Mother's Brief at 4. Mother argues that, although she did not comply with all court ordered services, she made continued progress. Mother's Brief at 13.

In terminating Mother's parental rights pursuant to section 2511(a)(1), the trial court reviewed the record and the evidence presented, and concluded that it was clear from the record that, for a period of six months leading up to the filing of the petition for involuntary termination, Mother failed to perform any parental duties for the Children. Trial Court Opinion, 6/26/15 ("Trial Court Opinion"), at 8.

The trial court found

> There is little doubt Mother failed to perform her parental duties by any measure imaginable and that failure existed for over six months before the [termination] petition was filed by [OCY]. [Mother] is a drug addict, refuses to recognize it, and does nothing about it, to the detriment of [the C]hildren. By her own admission, she used drugs when she had custody of [the C]hildren yet thought nothing was wrong with doing so.
>
> Equally disturbing is her refusal to recognize the traumatic impact her toxic relationship with [F]ather has had on [the Children] and how their safety continued to be jeopardized because of his violent nature. She saw nothing wrong exposing [the C]hildren to his dangerous conduct and refused to follow through [Protection from Abuse] proceedings when she obviously suffered physical injuries at the hands of [F]ather.
>
> She failed to complete a domestic violence class required by the treatment plan, missing several classes, coming close to suspension from the program and ultimately failing to complete it. Noteworthy here is one more example of her dishonesty: she was told by the program facilitator that paramours of participants are not to be present during sessions, yet [F]ather was present. When confronted about his presence, she lied, maintaining no one was in the room she should not be in session with.

Trial Court Opinion at 8-9.

Ms. Hamilton testified that Mother did not remain drug free. N.T., 4/10/15, 16-17. Mother tested positive for drugs including marijuana, hydrocodone, and oxycodone on nine out of 26 drug screen tests. *Id.* at 16. Ms. Hamilton testified Mother had a mental health assessment at Erie County Care Management, and that Mother reported to her that she was attending Stairways Behavioral Health's dual diagnosis program ("Stairways Program"). *Id.* at 18-19. However, Stairways Program reported that Mother was not receiving services from them. *Id.* at 19. Ms. Hamilton testified that Mother did not follow through with the services for drug and alcohol treatment, Mother did not complete the domestic violence program, and Mother did not prove that she maintained employment and stable housing. *Id.* at 20, 22, 23. Ms. Hamilton testified that Mother did complete a parenting skills program. *Id.* at 21.

The testimony established prior reunification between the Children and Mother was unsuccessful due to her lack of compliance with court-ordered goals, her continued drug use, and her lack of cooperation with OCY. The trial court found that Mother failed to fulfill her parental duties and responsibilities for two years. Mother explained her conduct by blaming her drug use and on Father's bad influence on her. N.T., 4/10/15, at 175. Moreover, Mother stated that she had a parent-child bond with the Children, but no evidence established Mother took the necessary steps to establish a

parent-child bond or utilize available resources to preserve the parental relationship. *Id.* at 171. Therefore, the trial court properly terminated Mother's parental rights pursuant to section 2511(a)(1). We will not disturb the trial court's determinations. *In re M.G.*, 855 A.2d 68, 73-74.

The trial court must also consider how terminating Mother's parental rights would affect the needs and welfare of Children pursuant to 23 Pa.C.S. § 2511(b). Pursuant to section 2511(b), the trial court's inquiry is specifically directed to a consideration of whether termination of parental rights would best serve the developmental, physical, and emotional needs of the child. *See In Re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa.Super.2005), *appeal denied*, 897 A.2d 1183 (Pa.2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). We have instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id*.

Here, the trial court found the termination of Mother's parental rights would serve the Children's developmental, physical, and emotional needs and welfare. Trial Court Opinion at 8-9. The trial court found that Mother's missed visits were traumatic for the Children. *Id.* at 11.

Mrs. Abbott-Fay explained that the Children needed trauma focus therapy as the result of verbal and physical domestic violence at Mother and Father's home. N.T., 4/10/15, at 114. She testified that terminating Mother's parental rights would not detrimentally affect the Children because the Children have made significant gains in their foster home, and they need permanency and stability. *Id.* at 123. Mrs. Abbot-Fay further testified that the Children do not miss their Mother, and "were very tense and very resistive to connect to [Mother]." N.T., 4/10/15, at 116-117, 126. She also stated that the Children are thriving in their foster home, and "need to move forward." *Id.* at 123. Ms. Abbott-Fay testified Mother loves the Children, but the "bond that [Mother and the Children] have does not demonstrate a healthy bond." *Id.* at 122. While Mother professes that she loves the Children, this Court has held that a parent's love of her child, alone, does not preclude a termination. *See In re L.M.*, 923 A.2d 505, 512 (Pa.Super.2007); *see also In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa.Super.2008) (noting that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition).

Ms. Hamilton testified that Mother had an attachment to the Children, but that Mother's negatives, including her continued drug use and missed visits with the Children, outweighed the benefit of Mother's attachment to

the Children. N.T., 4/10/15, at 33. She further testified that the Children need permanency, and that Mother was not compliant with the trial court or Mother's treatment plan. *Id.* at 33. Ms. Hamilton testified that it was in the Children's best interest for Mother's parental rights to be terminated, and that the Children's foster parents are meeting the Children's needs. *Id.* at 34.

The trial court found that Mother and the Children have an unhealthy bond. Trial Court Opinion at 12. The trial court stated that, "whatever bond may have existed between the [C]hildren and [M]other was seriously eroded by her conduct, soon deteriorating to the point where it became unhealthy, if not non-existent." *Id.*

After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that there was no bond between Mother and the Children which, if severed, would be detrimental to the Children, and that the termination of Mother's parental rights would best serve the needs and welfare of the Children. Thus, we will not disturb the trial court's determinations. *See In re M.G.*, 855 A.2d at 73-74. We affirm the decrees terminating Mother's parental rights on the basis of section 2511(a)(1) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2015